UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JYWAN STOVALL,

                              Plaintiff,

        -v-

S.P.O. C. WILKINS and PAROLE
OFFICER JOYCE CRUSE,

                              Defendants.

Case No. 15-CV-2163 (KMK)

OPINION & ORDER

Appearances:

Jywan Stovall
Peekskill, NY
*Pro Se Plaintiff*

Kruti D. Dharia, Esq.
Yan Fu, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Jywan Stovall ("Plaintiff"), brings this pro se Action, pursuant to 42

U.S.C. § 1983, against S.P.O. C. Wilkins ("Wilkins") and Parole Officer Joyce Cruse ("Cruse")

(collectively, "Defendants"), alleging that Defendants violated his constitutional rights when

Plaintiff injured himself en route to a mandatory parole meeting.  (Dkt. No. 2.)  Before the Court

is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) (the "Motion").  (Dkt. No. 19.)  For the following reasons, Defendants' Motion is

granted.

<u>I.  Background</u>

<u>A.  Factual Background</u>

The following facts are drawn from Plaintiff's Complaint and are assumed to be true for purposes of resolving Defendants' Motion.

On January 8, 2014, Plaintiff, a parolee, was in a car accident which resulted in a compound fracture of his right ankle.  (Compl. 4 (Dkt. No. 2).)[1]  After undergoing surgery at Westchester Medical Center, which left him "with three screws to keep [his] heel bone in place along a[n] open wound," he was eventually released "with sp[e]cific instructions . . . to keep the injured leg elevated until further notice."  (*Id.*)  Plaintiff had two follow-up appointments at which doctors once again instructed him not to apply pressure to his leg.  (*Id.*)  At the second of the two appointments, Plaintiff's ankle was put in a hard cast and he was told to "remain on bed rest."  (*Id.*)

On March 3, 2014, Plaintiff obtained a doctor's note excusing him from work and any outdoor travel and "stating that [he] was in no condition to trav[el]."  (*Id.* at 3, 4.)  That same day, Plaintiff faxed the note to Defendants.  (*Id.* at 4.)  Because he was scheduled "to make an office report to parole" the following day, Plaintiff called the parole office to ensure that the fax was received.  (*Id.*)  He was told by Wilkins that the fax was received but that "she was not going to excuse [Plaintiff] from reporting and [that] if [Plaintiff] did not show[,] . . . it would [result] in a violation of [his] parole and [Plaintiff] would be returned to a correctional facility."  (*Id.*)  Plaintiff tried to explain the contents of the doctor's note to Wilkins and "how much pain he was in and that traveling via public transportation in his condition as well as the conditions of the

---

[1] Citations to Plaintiff's Complaint refer to the ECF-generated page numbers on the top of each page.

weather at the time were very haz[a]rdous to his health." (*Id.*)  Despite Plaintiff's protestations, Wilkins "made it clear that if [Plaintiff] failed to report to that office [then his] freedom would be taken away." (*Id.* at 5.)

At the time, Plaintiff was living in White Plains and the parole meeting was in New Rochelle.  (*Id.* at 4.)  Because Plaintiff had no driver's license (nor did he own a car), he had to "resort to public transportation (train and bus) to make it to . . . New Rochelle . . . from . . . White Plains." (*Id.* at 5.)  During his travels, Plaintiff "fell numerous times[,] sustaining minor cuts and scrapes and landing on and breaking the hard cast causing [severe] pain to the right ankle as well as the wo[u]nd that was not even halfway heal[e]d at the time." (*Id.*)  Plaintiff continues to have "lots of pain and the wound is still not fully heal[e]d." (*Id.*)

B.  Procedural Background

Plaintiff filed the Complaint against Wilkins, Cruse, and the New York State Department of Corrections and Community Supervision ("DOCCS"), on March 19, 2015.  (Dkt. No. 2.)  On April 24, 2015, the Court issued an Order instructing Plaintiff to show cause as to why his claims against DOCCS should not be dismissed for lack of subject matter jurisdiction pursuant to the Eleventh Amendment.  (*See* Dkt. No. 10.)  After Plaintiff failed to respond, the Court dismissed Plaintiff's claims against DOCCS on June 2, 2015, finding that the claims were barred by the Eleventh Amendment.  (*See* Dkt. No. 11.)  Pursuant to a briefing scheduled ordered by the Court (*see* Dkt. No. 18), Defendants filed their Motion and accompanying papers on October 8, 2015, (*see* Dkt. Nos. 19–21).  Although he sought, and was granted, an extension of time to file his opposition papers, (*see* Dkt. No. 22), Plaintiff failed to submit any opposition.  On January 26, 2016, the Court issued an Order providing Plaintiff an additional 30 days to respond to the Motion and warning Plaintiff that if he failed to respond within the allotted time, the Court

would deem the Motion fully submitted and would rule based on the existing papers.  (*See* Dkt. No. 27.)[2]  Plaintiff never filed any opposition papers.

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

---

[2] This was the second such Order issued by the Court.  (*See* Dkt. No. 25.)

pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions.").

     "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted));

*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a

dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as

true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of

resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the

plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing

*Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

     Lastly, because Plaintiff is proceeding pro se, the Court must construe his pleadings

liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v.

Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal

quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d

Cir. 2006) (per curiam) (same).  This admonition "applies with particular force when a plaintiff's

civil rights are at issue." *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*,

357 F.3d 197, 200 (2d Cir. 2004) (same).  However, the liberal treatment afforded to pro se

litigants does not excuse a pro se party "from compliance with relevant rules of procedural and

substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B.  Analysis

1.  Due Process

Because Plaintiff was a parolee at the time of the alleged constitutional violation, his claim is appropriately analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment.  *See, e.g.*, *Ciccone v. Ryan*, No. 14-CV-1325, 2015 WL 4739981, at *3 (S.D.N.Y. Aug. 7, 2015) (noting that the claims brought by the plaintiff, who was "on parole, not incarcerated or institutionalized," when the claims arose, were "appropriately analyzed under the Fourteenth Amendment, not the Eighth"); *Rodriguez v. Rivera*, No. 12-CV-5823, 2013 WL 5544122, at *4 n.2 (S.D.N.Y. Sept. 16, 2013) ("Because [the] plaintiff is not a convicted prisoner, her deliberate indifference claim may only be brought under the Due Process Clause and not the Eighth Amendment.").  Generally, however, the Due Process Clause "confer[s] no affirmative right to government aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); *see also Matican v. City of N.Y.*, 524 F.3d 151, 155 (2d Cir. 2008) (same).

One exception to this general rule exists when there is a special relationship between the state and a plaintiff.  *See Matican*, 524 F.3d at 155; *Ciccone*, 2015 WL 4739981, at *4.  The Second Circuit has explained that some form of "involuntary custody" is the "linchpin of any special relationship exception."  *Matican*, 524 F.3d at 156.  Specifically, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *Id.* (internal quotation marks omitted).  Such a duty "arises solely from 'the State's affirmative act of restraining the individual's freedom to act on his own behalf through incarceration,

6

institutionalization, or other similar restraint of personal liberty.'" *Id.* (alteration omitted) (quoting *DeShaney*, 489 U.S. at 200); *see also DeShaney*, 489 U.S. at 200 (explaining that the "affirmative duty to protect arises . . . from the limitation which [the state] has imposed on [the individual's] freedom to act on his own behalf").

As a parolee required to report for certain meetings, Plaintiff's "freedom to act on his own behalf," *Matican*, 524 F.3d at 156 (internal quotation marks omitted), was not limitless. Indeed, the Second Circuit has recognized that "[a] parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed." *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005) (per curiam); *see also Gibson v. Wood*, 563 F. Supp. 2d 341, 347 (D. Conn. 2008) (same). In a case analogous to this one, a district court in the Second Circuit found that a parolee and his parole officer shared a "special relationship" to the extent that the parole officer required that the parolee report to a meeting despite the parolee's concerns for his safety. *See Gibson*, 563 F. Supp. 2d at 347. Likewise, given his status as a parolee required to report to certain meetings, Plaintiff can be said to have a "special relationship" with the state, giving rise to at least some duties on behalf of the state to protect Plaintiff. *See Ciccone*, 2015 WL 4739981, at *5 ("Under *Jacobs*, . . . [the plaintiff] and [the defendant, his parole officer,] clearly had the kind of 'special relationship' which could subject [the defendant] to liability notwithstanding the general rule of *DeShaney*."); *Gibson*, 563 F. Supp. 2d at 347 (same); *cf. George v. Rockland State Psychiatric Ctr.*, No. 10-CV-8091, 2014 WL 5410059, at *8 (S.D.N.Y. Oct. 23, 2014) (finding that a special relationship did not exist between parolee and state where parolee "was free to find his own medical treatment and there [was] no evidence that he was required to receive treatment [at a] specific[] [hospital]").

7

However, "[b]ecause the limitations imposed by the state are minimal, so too are the duties it assumes." *Jacobs*, 400 F.3d at 107; *see also Ciccone*, 2015 WL 4739981, at *5 (same); *Rodriguez*, 2013 WL 5544122, at *7 (noting that "whether and to what extent the State has assumed a duty of care under the special relationship exception turns on whether and to what extent the State has affirmatively acted to restrain an individual's freedom to act on her own behalf"). Here, the limitations imposed were extremely minimal: Plaintiff was merely required to report to a certain location at a certain time. (*See* Compl. 4.) While Plaintiff allegedly expressed concern about using public transportation to travel to the meeting given his condition, there are no allegations that Defendants required him to use such transportation. (*Id.*) The Court is skeptical that such a minimal limitation—the need to report—could give rise to a duty as substantial as one that requires parole officers to ensure safe transit for parolees, and Plaintiff has offered no legal authority suggesting such a duty.

However, even assuming Defendants had a "special relationship" with Plaintiff, and that Defendants violated an attendant duty owed to Plaintiff by requiring him to travel to his meeting despite his injuries, Defendants can be held liable only if their "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican*, 524 F.3d at 155 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998)); *see also Ciccone*, 2015 WL 4739981, at *6 (same); *Gibson*, 563 F. Supp. 2d at 347 (noting that a parole officer "could be liable for [the parolee's] injuries if his requirement that [the parolee] report to see him despite [the parolee's] concerns for his safety shock[s] the conscience" (internal quotation marks omitted)). To be actionable, the conduct "must be truly 'brutal and offensive to human dignity.'" *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quoting *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002)). Such a requirement "screens

out all but the most significant constitutional violations." *Matican*, 524 F.3d at 155.  To guide courts as to what conduct may be conscience-shocking, the Supreme Court has explained that "negligently inflicted harm is categorically beneath the threshold of constitutional due process," while "conduct intended to injure in some way[,] unjustifiable by any government interest[,] is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849; *see also Lombardi*, 485 F.3d at 82 (same); *Ciccone*, 2015 WL 4739981, at *6 (same). And falling somewhere between these two poles is "deliberate indifference," which can support a substantive due process claim, but with a "potent" qualification:

> Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking.

*Lombardi*, 485 F.3d at 82 (quoting *Lewis*, 523 U.S. at 850).

Plaintiff alleges that he faxed to Defendants a doctor's note stating that he was in no condition to travel due to a broken ankle he had suffered and for which he remained in a hard cast.  (Compl. 4.)  According to the Complaint, Wilkins confirmed that the fax was received and Plaintiff further explained to Wilkins over the phone that he was in pain and that traveling to the meeting via public transportation was hazardous to his health.  (*Id.*)  Despite this, Wilkins made clear to Plaintiff that if he failed to report, it would be a violation of his parole and Plaintiff "would be returned to a correctional facility."  (*Id.*)  In his efforts to travel to the meeting, Plaintiff fell numerous times, causing severe pain that lasts to this day.  (*Id.* at 5.)

Nothing alleged in the Complaint shocks the contemporary conscience, or is brutal or offensive to human dignity.  The Complaint does not suggest that Defendants *intended* that Plaintiff suffer additional injuries by requiring him to report to his pre-scheduled parole meeting. Nor does the Complaint allege that Defendants required Plaintiff to use a particularly dangerous

9

form of transportation.  The Complaint merely alleges that Defendants required a parolee with a hard cast on his foot to attend a parole meeting roughly 10 miles away from his home.  This is not offensive to human dignity.  *See Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) ("To establish a substantive due process violation, [a plaintiff] must show that the [defendant's] alleged acts . . . were 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" (quoting *Lowrance v. C.O. S. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994))); *cf. Pena v. DePrisco*, 432 F.3d 98, 114 (2d Cir. 2005) (holding that police officers' conduct shocked the conscience where they allegedly failed to prevent—and even encouraged or condoned—a fellow officer's off-duty drinking and driving that resulted in death of pedestrians); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 361–62 (S.D.N.Y. 2007) (finding that conduct of police officers who "responded to [the] plaintiff's residence at the request of her former husband and attempted to coerce plaintiff to allow [the former husband] visitation by threatening her with arrest and the filing of criminal charges against her," and "yelled and threatened [the] plaintiff, banged on doors and windows and, on one occasion, forcibly entered her home without consent or a warrant," although "unwise," did not rise to the level of conscience-shocking).  Moreover, conduct by government officials is less likely to be conscience-shocking when the officials are "subjected to the 'pull of competing obligations.'" *Lombardi*, 485 F.3d at 83.  Here, Defendants were "faced [with] the competing interests of [the parolee's] claimed threat to his safety [upon his reporting to a parole meeting] and the public's interest in [the parolee's] compliance with the conditions of his release."  *Gibson*, 563 F. Supp. 2d at 348.  Because Defendants' conduct does not shock the contemporary conscience, Plaintiff's due process rights were not violated and his claim fails.

2.  Qualified Immunity

Further, even if their conduct ran afoul of the Due Process Clause, Defendants would still be entitled to qualified immunity.  Qualified immunity shields a "government official[] from liability for civil damages insofar as [his or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  The protection attaches "only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir.) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 2335 (2015).  In this context, a court "is guided by two questions:  first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (alterations and internal quotation marks omitted).  To determine whether a right was clearly established, the Court looks to "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question[;] and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).

As Defendants concede, the Second Circuit did "recognize[] that the State owes parolees *some* duty" in *Jacobs*.  (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss 8–9 (Dkt. No. 20).)  However, neither *Jacobs* nor later Second Circuit precedent clearly establishes that a state's duty to parolees extends to the provision of safe transport to parole meetings when the parolee's freedom to arrive in any manner is not otherwise restricted by the state. *See Ciccone*,

11

2015 WL 4739981, at *7 (recognizing that *Jacobs* established "that some duty is owed to a parolee if limitations are imposed upon him," but finding that "there is no clearly established right of a parolee to have clothing provided by the government, or assistance in finding a warm place to congregate during the winter when the parolee's freedom of movement is not otherwise restricted"); *cf. Rodriguez*, 2013 WL 5544122, at *10 ("Here, [the] defendants would have had to predict that *Jacobs v. Ramirez* would be viewed expansively.  This they need not do."). Accordingly, even if Defendants' conduct was found to violate the Due Process Clause, the claims would still be dismissed because Defendants would be entitled to qualified immunity.[3]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted, and the Complaint is dismissed.  Because Plaintiff, proceeding pro se, has yet to file an amended complaint, the Complaint will be dismissed without prejudice.  Plaintiff is given 45 days to submit an Amended Complaint addressing the deficiencies outlined above.  If Plaintiff fails to submit an Amended

---

[3] Plaintiff's claim against Cruse is subject to dismissal on the additional ground that Plaintiff has failed to allege the personal involvement of Cruse in the alleged constitutional violation.  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)).

Plaintiff's *only* allegation with respect to Cruse is that Plaintiff faxed the doctor's note to both Wilkins and Cruse.  (*See* Compl. 4.)  However, there are no allegations that Cruse spoke with Plaintiff about the meeting or was at all involved in the decision to require Plaintiff to attend his parole meeting despite his injuries.  (*See generally id.*)  Accordingly, Plaintiff's claim against Cruse fails for the additional reason that he has failed to allege Cruse's personal involvement in the alleged constitutional violation.

Complaint within the allotted time, the Action may be dismissed with prejudice. The Clerk of

Court is respectfully requested to terminate the pending Motion. (Dkt. No. 19.)

SO ORDERED.

Dated: September 29, 2016
       White Plains, New York

KENNETH M. KARAS
United States District Judge

13